IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**JOE HAND PROMOTIONS INC.**                                                         **PLAINTIFF**

v.                                 Case No. 4:19-cv-00569-LPR

**JWC MANAGEMENT LLC d/b/a/ BIG D'S SPORTS BAR**        **DEFENDANTS**
**and JASON CASTILLOW**

## DEFAULT JUDGMENT ORDER

On August 15, 2019, Plaintiff Joe Hand Promotions Inc. filed a Complaint in the Eastern District of Arkansas.[1] The Complaint alleges that on April 8, 2017, Defendants JWC Management LLC and Jason Castillow intentionally pirated *Ultimate Fighting Championship® 210: Cormier v. Johnson 2*, a broadcast over which Plaintiff held the exclusive commercial distribution rights.[2] The Complaint alleges that this act of piracy violated 47 U.S.C. § 553 and 47 U.S.C. § 605.[3]

Defendants have failed to plead or otherwise defend against the allegations in Plaintiff's Complaint.[4] And Defendants have not appeared in the case. Pursuant to Plaintiff's request, the Clerk of the Court entered default against Defendants.[5] Now before the Court is Plaintiff's Motion for Default Judgment under Federal Rule of Civil Procedure 55(b)(2).[6] The Court will grant Plaintiff's Motion for the following reasons.

---

[1] Pl.'s Compl. (Doc. 1).

[2] *Id.* ¶ 1.

[3] *Id.* ¶¶ 14-17.

[4] Pl.'s Request for Entry of Default (Docs. 5); Clerk's Entry of Default (Doc. 6).

[5] Pl.'s Request for Entry of Default (Docs. 5); Clerk's Entry of Default (Doc. 6). Plaintiff's Request for Entry of Default includes a Declaration from Plaintiff's attorney, Kelly W. McNulty, stating that Defendants are not members of the Armed Forces of the United States, infants, or incompetent persons. Pl.'s Request for Entry of Default (Docs. 5) at 3.

[6] Pl.'s Mot. for Default J. (Doc. 7).

**Facts**

When default is entered, the facts in the complaint (aside from those relating to damages) are taken as true.[7] In fact, "the 'defendant is deemed to have admitted all well pleaded allegations in the complaint.'"[8] Defendant JWC Management LLC is an Arkansas business that has operated, maintained, controlled, and conducted business as Big D's Sports Bar ("Big D's").[9] On the date of the alleged piracy, Defendant Jason Castillow was an officer, director, shareholder, member and/or principal of JWC Management LLC.[10]

Plaintiff "is a company that specializes in distributing and licensing premier sporting events to commercial locations such as bars, restaurants, lounges, clubhouses and similar establishments."[11] Since 2001, Plaintiff has been the exclusive domestic distributor for the Ultimate Fighting Championship®.[12] And on April 8, 2017, Plaintiff held the exclusive commercial distribution rights to the broadcast of *Ultimate Fighting Championship® 210: Cormier v. Johnson 2* (the "Program"), including all undercard bouts and commentary.[13] "The Program broadcast originated via satellite uplink, and was subsequently re-transmitted interstate to cable systems and satellite television companies via satellite signal."[14]

"Defendants could have contracted with Plaintiff and purchased authorization to exhibit

---

[7] *Martinizing Int'l, LLC v. BC Cleaners, LLC*, 855 F.3d 847, 850 (8th Cir. 2017).

[8] *Sullivan & Assocs., LLC v. Holladay*, No. 3:09CV00079 JLH, 2010 WL 582790, at *1 (E.D. Ark. Feb. 16, 2010) (quoting *Taylor v. City of Ballwin*, 859 F.2d 1330, 1333 n. 7 (8th Cir.1988)).

[9] Pl.'s Compl. (Doc. 1) ¶ 2.

[10] *Id.* ¶ 3.

[11] *Id.* ¶ 6.

[12] *Id.*

[13] *Id.* ¶ 1.

[14] *Id.* ¶ 7.

2

the Program in [Big D's] for a fee."[15]  But Defendants did not "contract with Plaintiff or pay a fee to Plaintiff to obtain the proper license or authorization."[16]  "At no time did Plaintiff give Defendants license, permission or authority to receive and exhibit the Program" in Big D's.[17] Instead, Defendants willfully intercepted or received the interstate communication of the Program via "unauthorized satellite transmission or, alternatively, by unauthorized receipt over a cable system."[18]  Defendants then "unlawfully transmitted, divulged and published" the Program to patrons in Big D's.[19]  The Complaint alleges that, on the night of the Program, Defendant Castillow (1) "was an officer, director, shareholder, member and/or principal of the entity owning and operating [Big D's]" (2) "directly participated in and/or assisted in [Big D's] unauthorized exhibition of the Program," (3) "had a right and ability to supervise the activities of [Big D's]," and (4) "had an obvious and direct financial interest in the activities of [Big D's]."[20]

Aside from the factual allegations in the Complaint, Plaintiff provided multiple exhibits in support of its Motion for Default Judgment.  The first exhibit is the Declaration of Kelly W. McNulty, Plaintiff's attorney.[21]  Attached to this Declaration "is a true and correct screenshot (image that shows the contents of a computer display) of a Facebook post wherein the exhibition of [the Program] at Big D's . . . was advertised."[22]  The screenshot appears to have been taken three days prior to the Program being aired.[23]  The "Details" section of the page says in full: "Big

---

[15] *Id.* ¶ 9.

[16] *Id.*

[17] *Id.*

[18] *Id.* ¶ 10.

[19] *Id.*

[20] *Id.* ¶ 3.

[21] Ex. 1 to Pl.'s Mot. for Default J. (Doc. 7-1) at 2-3.

[22] *Id.* at 2.

[23] *Id.* at 5.

D's Sports Bar will be hosting Saturday nights UFC fight. There will be a small cover of $5, great beer and drink specials, and food on site."[24]

The second exhibit to Plaintiff's Motion for Default Judgment is an Affidavit from Joe Hand, Jr., "the President of Plaintiff, JOE HAND PROMOTIONS, INC."[25] Among other things, Mr. Hand's Affidavit explains the erosion of Plaintiff's sales at the hands of "signal pirates" and Plaintiff's nationwide effort to police its signals.[26] Mr. Hand's Affidavit states that Plaintiff has "retained, at considerable expense, auditors and law enforcement personnel to detect and identify signal pirates."[27]

Plaintiff hired Lisa Strawn to audit Big D's for signal pirates on the night of the Program.[28] Plaintiff's third exhibit is Ms. Strawn's Affidavit.[29] The Affidavit states that, on the night of the Program, Ms. Strawn paid a $5 cover charge to enter Big D's.[30] The Program was displayed on only one 42" television, which was located behind the bar.[31] Ms. Strawn estimated that Big D's capacity was approximately 75 people, but that she only counted 6-12 people on location during the Program's exhibition.[32] The Affidavit states that the bartender "apologized for the quality of the fight" and that the bartender explained that Big D's "tried to buy it off pay per view but couldn't get it, so someone had to bring it on a USB."[33]

---

[24] *Id.* The Declaration also provides an estimate of reasonable attorneys' fees and costs associated with this litigation. *Id.* at 3.

[25] Ex. 2 to Pl.'s Mot. for Default J. (Doc. 7-1) at 7-11.

[26] *Id.* at 8-10.

[27] *Id.* at 8.

[28] *Id.* at 9-10.

[29] Ex. 3 to Pl.'s Mot. for Default J. (Doc. 7-1) at 13-14.

[30] *Id.* at 13.

[31] *Id.*

[32] *Id.*

[33] *Id.*

The fourth exhibit Plaintiff provided in support of its Motion for Default Judgment is the "Rate Card" that was in effect at the time of the Program's broadcast.[34] The rate that should have been paid to Plaintiff depended on the purchasing establishment's maximum fire code occupancy.[35] For an establishment with a maximum capacity of 0-50 persons, the commercial sublicense fee for the Program would have been $788.[36] For an establishment with a maximum capacity of 51-75 persons, the commercial sublicense fee for the Program would have been $893.[37]

The final exhibit Plaintiff provided is a copy of the commercial licensing agreement between Plaintiff and Zuffa, LLC d/b/a/ the Ultimate Fighting Championship®.[38] The agreement "was made and entered into effective as of January 1, 2016" and continued "in effect until December 31, 2018."[39]

## Discussion

Although the facts in the Complaint are taken as true and deemed admitted, the Court must still "consider whether the unchallenged facts constitute a legitimate cause of action."[40] Indeed, "a party in default does not admit mere conclusions of law."[41] The Complaint asserts causes of action under 47 U.S.C. § 553 and 47 U.S.C. § 605.[42] But Plaintiff's Motion for Default Judgment recognizes that Plaintiff cannot recover under both provisions for the same alleged violation.[43]

---

[34] Ex. 4 to Pl.'s Mot. for Default J. (Doc. 7-1) at 16.

[35] Ex. 2 to Pl.'s Mot. for Default J. (Doc. 7-1) at 8.

[36] Ex. 4 to Pl.'s Mot. for Default J. (Doc. 7-1) at 16.

[37] *Id.*

[38] Ex. 5 to Pl.'s Mot. for Default J. (Doc. 7-1) at 18-32.

[39] *Id.* at 18-19.

[40] *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010) (quoting *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010)).

[41] *Id.* (quoting *Murray*, 595 F.3d at 871).

[42] Pl.'s Compl. (Doc. 1) ¶¶ 14-17.

[43] According to Plaintiff, "[w]hen a defendant is liable under both §§ 553 and 605, an aggrieved plaintiff may recover damages under only one section." Pl.'s Br. in Supp. of Mot. for Default J. (Doc. 8) at 5 (citing *Kingvision Pay-*

Plaintiff therefore elects to pursue statutory damages under 47 U.S.C. § 605.

According to section 605(a), "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person."[44] Courts routinely interpret "radio communication" to include satellite transmissions.[45] Importantly, section 605 prohibits more than just intercepting and broadcasting satellite programing. "Section 605 also prohibits 'divulg[ing] or publish[ing]' information gleaned from unauthorized signal reception, or otherwise using that information for one's 'own benefit or for the benefit of another not entitled thereto.'"[46] "Any person aggrieved by any violation of subsection (a) . . . of this section may bring a civil action" in district court.[47] An aggrieved person includes "any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming . . . ."[48]

To prove an entity violated section 605, a plaintiff must show that: "(1) the event or program was shown in the defendant's establishment and (2) plaintiff did not authorize the exhibition of the event or program there."[49] Additionally, courts have said that, "to be held liable under § 605, plaintiff must [also] show supervisory capacity and control over activities occurring

---

*Per-View Corp., LTD v. Wright*, 2006 WL 4756450 at *2 (M.D. Fla. 2006)). *See also Joe Hand Promotions, Inc. v. Peterson*, No. 8:12CV241, 2014 WL 824119, at *4 (D. Neb. Mar. 3, 2014) (explaining that section 553 and section 605 are mutually exclusive for purposes of recovery because section 553 applies to cable transmissions and section 605 applies to satellite transmissions).

[44] 47 U.S.C. § 605(a).

[45] *J & J Sports Prods., Inc. v. Ramirez*, No. 4:17-CV-00277-KGB, 2019 WL 1449612, at *4 (E.D. Ark. Mar. 31, 2019).

[46] *DirecTV, Inc. v. Webb*, 545 F.3d 837, 848 (9th Cir. 2008) (quoting 47 U.S.C. § 605(a)).

[47] 47 U.S.C. § 605(e)(3)(A).

[48] 47 U.S.C. § 605(d)(6).

[49] *Ramirez*, 2019 WL 1449612, at *4 (quoting *Joe Hand Promotions, Inc. v. Shepard*, Case No. 4:12-cv-1728 SNLJ, 2015 WL 1976342, at *8 (E.D. Mo. April 30, 2015)).

at the place of business, as well as receipt of a financial benefit from those activities."[50]

Based on all of the undisputed facts set forth above, Plaintiff has established that Defendants violated 47 U.S.C. § 605 when Big D's intercepted (or received) and exhibited the Program without Plaintiff's authorization. The undisputed facts establish liability of both the offending entity (JWC Management LLC) and the individual with control or supervisory capacity over the offending entity (Jason Castillow).[51]

## Damages

According to section 605(e)(3)(C)(i), an aggrieved party may elect to recover either actual damages or "an award of statutory damages for each violation . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ."[52] Section 605 also provides that "if the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation . . . ."[53]

Under Federal Rule of Civil Procedure 55(b)(2), the Court *may* hold an evidentiary hearing to determine damages. "[B]ut a hearing is not required if the amount is ascertainable from definite figures, facts, and evidence provided by plaintiffs."[54] Indeed, "the need for a hearing is within the sound discretion of the district court."[55] A hearing is not necessary in this case. Plaintiff elects to

---

[50] *Id.* at *5 (collecting cases).

[51] The Complaint alleges that, on the night of the Program, Defendant Castillow (1) "was an officer, director, shareholder, member and/or principal of the entity owning and operating [Big D's]" (2) "directly participated in and/or assisted in [Big D's] unauthorized exhibition of the Program," (3) "had a right and ability to supervise the activities of [Big D's]," and (4) "had an obvious and direct financial interest in the activities of [Big D's]." Pl.'s Compl. (Doc. 1) ¶ 3.

[52] 47 U.S.C. § 605(e)(3)(C)(i).

[53] 47 U.S.C. § 605(e)(3)(C)(ii).

[54] *Helena Agri-Enterprises LLC v. Johnson*, No. 2:19-CV-00116-LPR, 2020 WL 265943, at *2 (E.D. Ark. Jan. 17, 2020).

[55] *See, e.g.*, *Stephenson v. El-Batrawi*, 524 F.3d 907, 916 (8th Cir. 2008); *see also Joe Hand Promotions, Inc. v.*

receive statutory damages and has provided the Court with definite figures, facts, and evidence to determine a sum that "the court considers just."

## I.   Statutory Damages

"Courts have gone about calculating statutory and enhanced damages for violations of § 605 in various ways, considering 'both the nature of the violation in light of the statutory scheme involved, as well as the particular circumstances concerning the defendant[s'] actions.'"[56] Plaintiff suggests that $5,000 is a just award under section 605(e)(3)(C)(i)(II).  According to Plaintiff, this number is appropriate based on (1) "the lost revenue Plaintiff should have received from selling the sublicense to the Defendants," (2) "the deterrent purposes of the statute," (3) the profits attributable to Defendants' violation, and (4) the damage to Plaintiff's "goodwill and reputation."[57] Considering all of the undisputed facts in this case, and after reviewing statutory awards granted in similar cases, the Court concludes that $2,500 is a just award of damages under 47 U.S.C. § 605(e)(3)(C)(i)(II).[58]

---

*Burton*, No. 4:19-CV-570-BRW, 2021 WL 926262, at *2 (E.D. Ark. Mar. 10, 2021) (reasoning that a hearing was not necessary to determine damages because the plaintiff elected to recover statutory damages and provided the court with sufficient documentation to make its decision).

[56] *J & J Sports Prods. v. Diaz De Leon*, No. 2:11-CV-02051, 2012 WL 79877, at *3 (W.D. Ark. Jan. 11, 2012) (citing *DirecTV, Inc. v. Schulien*, 401 F. Supp. 2d 906, 915 (N.D. Ill. 2005)).

[57] Pl.'s Br. in Supp. of Mot. for Default J. (Doc. 8) at 5-8.  The Court notes that deterrence is a factor in both the determination of statutory damages and enhanced damages.  *See e.g.*, *J & J Sports Prods., Inc. v. Acevedo*, No. 4:09CV00496SWW, 2010 WL 1980849, at *2–3 (E.D. Ark. May 13, 2010).

[58] *See, e.g.*, *Burton*, 2021 WL 926262, at *3 (awarding the plaintiff $2,500 in statutory damages); *Joe Hand Promotions, Inc. v. Moore*, No. 4:15-CV-4082, 2017 WL 741009, at *2 (W.D. Ark. Feb. 24, 2017) (awarding statutory damages of $950, which is the amount the plaintiff "should have paid for a sublicensing agreement"); *J & J Sports Prods., Inc. v. Argueta*, No. 5:15-CV-05200, 2017 WL 6016520, at *3 (W.D. Ark. Jan. 9, 2017) (awarding statutory damages of $250 after concluding that there was no evidence that the defendant was aware that its acts constituted a violation of section 605); *J & J Sports Prods., Inc. v. Lara*, No. 5:15-CV-05208, 2016 WL 5796909, at *3 (W.D. Ark. Sept. 29, 2016) (awarding $1,000 in statutory damages); *Joe Hand Promotions, Inc. v. Dalal*, No. 6:15-CV-6067, 2016 WL 3748516, at *3 (W.D. Ark. July 11, 2016) (awarding $1,250 in statutory damages, which is the amount the plaintiff should have paid for a sublicensing agreement); *Diaz De Leon*, 2012 WL 79877, at *4 (awarding $5,000 in statutory damages); *Acevedo*, 2010 WL 1980849, at *2 (awarding the plaintiff the statutory maximum of $10,000 under 605(e)(3)(C)(i)(II)).

Plaintiff's lost revenue is, at the most, only $893.[59]  And Defendants' profits attributable to the violation are likely low considering that only 6-12 people were on location during the Program's exhibition.[60]  Even assuming every patron paid the $5 cover fee and purchased food and drinks, Defendants made only minimal profits off the violation.  The Court accounts for the deterrent purpose of the statute and the damage to Plaintiff's goodwill and reputation by awarding statutory damages of nearly three times Plaintiff's lost revenue.

## II.  Enhanced Damages

Plaintiff contends that enhanced damages are appropriate because Defendants acted willfully and for direct or indirect commercial advantage or private financial gain.  Based on the undisputed facts in the record, the Court finds that enhanced damages are warranted in this case.  The facts demonstrate that Defendants' violation was willful.  Indeed, "intentional acts are required to pirate a closed-circuit broadcast; the unscrambled airwaves . . . do not just happen."[61]  And the facts demonstrate that the violation was committed for direct or indirect commercial advantage or private financial gain.  A screenshot of Big D's Facebook page revealed the following promotion: "Big D's Sports Bar will be hosting Saturday nights UFC fight.  There will be a small cover of $5, great beer and drink specials, and food on site."[62]  According to Ms. Strawn's undisputed Affidavit, Defendants did in fact require a $5 cover charge to enter Big D's on the night of the program.

---

[59]  For an establishment with a maximum capacity of 51-75 persons, the commercial sublicense fee for the Program would have been $893.  Ex. 4 to Pl.'s Mot. for Default J. (Doc. 7-1) at 16.

[60]  Ex. 3 to Pl.'s Mot. for Default J. (Doc. 7-1) at 13.

[61]  *Dalal*, 2016 WL 3748516, at *3 (quoting *Diaz De Leon*, 2012 WL 79877, at *3); *see also Acevedo*, 2010 WL 1980849, at *3 ("'Based on the limited methods of intercepting closed circuit broadcasting of pay-perview events and the low probability that a commercial establishment could intercept such a broadcast merely by chance,' courts have held the unauthorized display of such an event willful.") (internal citation omitted).  Mr. Hand's Affidavit explains that "cable and satellite television providers scramble, restrict and/or block commercial customer accounts and equipment" from receiving Pay-Per-View events such as the Program.  Ex. 2 to Pl.'s Mot. for Default J. (Doc. 7-1) at 9.  As a result, Defendants used a "USB" to either intercept or receive the unscrambled satellite transmission.  Ex. 3 to Pl.'s Mot. for Default J. (Doc. 7-1) at 13.

[62]  Ex. 1 to Pl.'s Mot. for Default J. (Doc. 7-1) at 5.

9

The purpose of enhanced damages is to punish violations and simultaneously deter future piracy.  To determine the appropriate amount of enhanced damages, courts generally consider "whether there have been 'repeated violations over an extended period of time,' whether the defendant advertised the event or charged a cover charge, the amount of the defendant's gain, and other similar factors."[63]  A defendant has "no incentive to cease the violation if the penalty were merely the amount that he should have paid for a sublicensing agreement."[64]  But the enhancement should not be so severe that it puts the defendant out of business.  Accordingly, courts will typically award enhanced damages ranging between two and six times the amount awarded for statutory damages.[65]

There is no indication in the record that Defendants had previously violated any anti-piracy laws.  And the amount of Defendants' gain is relatively small.  Defendants saved between $788 and $893 by not purchasing a sublicense, and Defendants likely realized only minimal proceeds on incidental purchases of food and drinks from the few patrons in attendance.  But it is uncontroverted that Defendants charged a cover charge on the night of the Program.  Plaintiff suggests that an enhancement of $10,000 will sufficiently punish Defendants' willful violation and deter future piracy.  The Court concludes that an enhancement of $5,000 is more appropriate.  Although the enhancement is only two times the amount of statutory damages (the lowest multiplier for enhanced damages seen in the Court's brief case survey), the award is still great enough to deter Defendants and others like Defendants from future acts of piracy.  And, of course,

---

[63] *E.g.*, *J & J Sports Prods., Inc. v. Cortes,* No. CIV. 10-1952 RHK/JJK, 2012 WL 2370206, at *2 (D. Minn. June 22, 2012).

[64] *E.g.*, *Moore*, 2017 WL 741009, at *3; *Dalal*, 2016 WL 3748516, at *3.

[65] *Moore*, 2017 WL 741009, at *3 (awarding enhanced damages of three times the award of statutory damages); *Dalal*, 2016 WL 3748516, at *3 (awarding enhanced damages of three times the award of statutory damages); *Diaz De Leon*, 2012 WL 79877, at *4 (awarding enhanced damages of two times the award of statutory damages); *Acevedo*, 2010 WL 1980849, at *3 (awarding enhanced damages of ten times the award of statutory damages).

if Defendants commit such an act again, the repeat nature of such a second violation would likely be met with a far greater enhancement.

### III. Attorneys' Fees and Costs

According to 47 U.S.C. § 605(e)(3)(B)(iii), the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."[66] Plaintiff's attorney estimates that attorneys representing Plaintiff expended a minimum of ten hours on this litigation through the preparation of Plaintiff's Motion for Default Judgment.[67] Plaintiff's attorney suggests that a rate of $250 per hour is reasonable for anti-piracy litigation given his firm's experience and other courts' regular approval of that rate.[68] The Court finds that the activities undertaken, hours billed, and hourly rates are reasonable. Plaintiff's attorney states that Plaintiff incurred costs of $400 to file suit, and $300 to effectuate service.[69] Plaintiff's request for costs is granted. The Court will therefore award Plaintiff attorneys' fees of $2,500 and costs of $700.

### Conclusion

For all of the foregoing reasons, the Court finds that JWC Management LLC and Jason Castillow willfully violated 47 U.S.C. § 605(a). Plaintiff Joe Hand Promotions Inc.'s Motion for Default Judgement is GRANTED. IT IS THEREFORE ORDERED THAT judgment will be entered in Plaintiff's favor in the total amount of $10,700 as follows:[70]

---

[66] 47 U.S.C. § 605(e)(3)(B)(iii).

[67] Ex. 1 to Pl.'s Mot. for Default J. (Doc. 7-1) at 3.

[68] *Id.*

[69] *Id.*

[70] Defendants are jointly and severally liable for the total amount of damages awarded. To hold otherwise would convert every award of statutory damages into an award of actual damages. Indeed, contrary to an award of actual damages, an award of statutory damages does not require a particularized accounting of the wrongs committed and the corresponding harm. It seems that it is for this very reason that courts will not hold both an individual and an entity liable under section 605 unless the plaintiff shows that the individual had "supervisory capacity and control over activities occurring at the place of business, as well as receipt of a financial benefit from those activities."

|  |  |
|---|---|
| Statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II): | $2,500. |
| Enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii): | $5,000. |
| Attorneys' fees under 47 U.S.C. § 605(e)(3)(B)(iii): | $2,500. |
| Costs under 47 U.S.C. § 605(e)(3)(B)(iii): | $700. |

Post-judgment interest shall be calculated at a rate of .06% from the date of the entry of the Judgment.[71] "Interest shall be computed daily to the date of payment" and "compounded annually."[72]

IT IS SO ORDERED this 26th day of April 2021.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT COURT

---

[71] According to 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." The weekly average 1-year constant maturity Treasury yield for the calendar week preceding the date of judgment is .06%. *See* BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, (Apr. 23, 2021, 3:00pm), https://www.federalreserve.gov/releases/h15/.

[72] 28 U.S.C. § 1961(b).